**1310**

[No. B240592. Second Dist., Div. Three. Feb. 21, 2013.]

LEE SCHMEER et al., Plaintiffs and Appellants, v.
COUNTY OF LOS ANGELES et al., Defendants and Respondents.

1312

COUNSEL

Nielsen Merksamer Parrinello Gross & Leoni, James R. Parrinello, Eric J. Miethke, Arthur G. Scotland, Sean P. Welch and Kurt R. Oneto for Plaintiffs and Appellants.

Wm. Gregory Turner for Council on State Taxation and California Taxpayers Association as Amici Curiae on behalf of Plaintiffs and Appellants.

John F. Krattli, County Counsel, Albert Ramseyer, Principal Deputy County Counsel, and Truc L. Moore, Deputy County Counsel, for Defendants and Respondents.

Colantuono & Levin, Michael G. Colantuono and Jon R. di Cristina for League of California Cities and California State Association of Counties as Amici Curiae on behalf of Defendants and Respondents.

Frank G. Wells Environmental Law Clinic, Sean B. Hecht and Xiao Y. Zhang for Surfrider Foundation, Heal the Bay, The 5 Gyres Institute, Environment California Research and Policy Center, and Seventh Generation Advisors as Amici Curiae on behalf of Defendants and Respondents.

OPINION

**CROSKEY, Acting P. J.**—A Los Angeles County ordinance prohibits retail stores from providing plastic carryout bags and requires stores to charge customers 10 cents for each paper carryout bag provided. Lee Schmeer and others (Petitioners) filed a combined petition for writ of mandate and complaint challenging the ordinance. Petitioners contend the ordinance violates article XIII C of the California Constitution, as amended by Proposition 26, because the 10-cent charge is a tax and was not approved by county voters. We conclude that the paper carryout bag charge is not a tax for purposes of article XIII C because the charge is payable to and retained by

the retail store and is not remitted to the county. We therefore will affirm the judgment in favor of the county and other respondents.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. Factual Background

The Los Angeles County Board of Supervisors enacted ordinance No. 2010-0059 on November 23, 2010. The ordinance prohibits retail stores within unincorporated areas of Los Angeles County from providing plastic carryout bags to customers. The ordinance states that retail stores may provide, for the purpose of carrying goods away from the store, only recyclable paper carryout bags or reusable carryout bags meeting certain requirements (including plastic bags satisfying those requirements). The ordinance also states that retail stores must provide reusable bags to customers, either for sale or free of charge, and encourages retail stores to educate their employees to promote reusable bags and post signs encouraging customers to use reusable bags.

The ordinance further states that retail stores must charge the customer 10 cents for each recyclable paper carryout bag provided and must indicate on the receipt the number of recyclable paper carryout bags provided and the total amount charged for the bags. It states that customers participating in the California Special Supplemental Nutrition Program for Women, Infants, and Children (Health & Saf. Code, § 123275) or the supplemental food program (Welf. & Inst. Code, § 15500 et seq.) are exempt from the charge and must be provided free of charge either reusable bags or recyclable paper carryout bags. The ordinance states that the money received for recyclable paper bags must be retained by the store and used only for (1) the costs of compliance with the ordinance; (2) the actual costs of providing recyclable paper bags; or (3) the costs of educational materials or other costs of promoting the use of reusable bags, if any.

The ordinance includes a severability provision stating: "If any section, subsection, sentence, clause, or phrase of this ordinance is for any reason held to be invalid by a decision of any court of competent jurisdiction, that decision will not affect the validity of the remaining portions of the ordinance. The Board of Supervisors hereby declares that it would have passed this ordinance and each and every section, subsection, sentence, clause, or phrase not declared invalid or unconstitutional without regard to whether any portion of this ordinance would be subsequently declared invalid."

The ordinance became effective on July 1, 2011. The ordinance was not submitted to the county electorate for its approval.

2. *Trial Court Proceedings*

Lee Schmeer, Salim Bana, Jeff Wheeler, Chris Wheeler and Hilex Poly Co. LLC (Hilex) filed a combined petition for writ of mandate and complaint in October 2011 against the County of Los Angeles and three county officials. Petitioners allege that the individual petitioners are California taxpayers who have been required to pay the paper carryout bag charge and that Hilex is a manufacturer of plastic bags prohibited by the ordinance.

Petitioners allege that the paper carryout bag charge required under the ordinance is a "tax" as defined in article XIII C of the California Constitution, as amended by Proposition 26. They allege that the charge was imposed by the county in violation of section 2 of article XIII C, which prohibits any new general or special tax imposed by local government without prior approval by the voters. Petitioners allege counts for (1) a writ of mandate to prevent the county from implementing and enforcing the ordinance and (2) a judicial declaration that the paper carryout bag charge violates article XIII C.

The trial court conducted a hearing on the merits of the petition for writ of mandate in March 2012. The court adopted its written tentative decision denying the petition as its final ruling. The court concluded that the paper carryout bag charge is not a general or special tax because the money is retained by the retail stores and is not remitted to the county. The court also concluded that even if the charge fell within the general definition of a tax under Proposition 26, the charge would satisfy an exception to that definition for "[a] charge imposed for a specific benefit conferred or privilege granted directly to the payor that is not provided to those not charged, and which does not exceed the reasonable costs to the local government of conferring the benefit or granting the privilege" (Cal. Const., art. XIII C, § 1, subd. (e)(1)). The court stated that the county, through retail stores, conferred the benefit of a paper carryout bag only on customers paying the charge, satisfying the first prong of the exception. The court stated that Petitioners waived the argument that the charge did not satisfy the second prong of the exception by failing to assert that argument in their opening brief on the petition. The court stated further that, in any event, substantial evidence shows that the money received by the stores for recyclable paper bags will be used for the purposes required under the ordinance. The court therefore concluded that Petitioners were not entitled to a writ of mandate.

Petitioners' counsel acknowledged that the trial court's ruling on the petition for writ of mandate effectively adjudicated the count for declaratory relief as well. The court entered a judgment in April 2012 denying Petitioners any relief on their combined petition for writ of mandate and complaint. Petitioners timely appealed the judgment.

## CONTENTIONS

Petitioners contend (1) the paper carryout bag charge is a special tax imposed by the county without the voters' prior approval and therefore violates article XIII C of the California Constitution; (2) the charge does not satisfy the exception for a charge imposed for a specific benefit conferred or privilege granted, or any other exception under article XIII C; and (3) the challenged provisions of the ordinance are not severable, so the entire ordinance must be invalidated, including the ban on single-use plastic bags.

## DISCUSSION

### 1.  Standard of Review

The trial court's ruling turned on its construction of article XIII C of the California Constitution, as amended by Proposition 26, and its determination that the amount charged did not exceed the reasonable costs. We review the ruling de novo to the extent that the court decided questions of law concerning the construction of constitutional provisions and not turning on any disputed facts. (*Professional Engineers in California Government v. Kempton* (2007) 40 Cal.4th 1016, 1032 [56 Cal.Rptr.3d 814, 155 P.3d 226] (*Professional Engineers*).) We review the court's factual findings under the substantial evidence standard. (*Ibid.*)

### 2.  Construction of a Voter Initiative

■ We construe provisions added to the state Constitution by a voter initiative by applying the same principles governing the construction of a statute. (*Professional Engineers, supra,* 40 Cal.4th at p. 1037.) Our task is to ascertain the intent of the electorate so as to effectuate the purpose of the law. (*Robert L. v. Superior Court* (2003) 30 Cal.4th 894, 901 [135 Cal.Rptr.2d 30, 69 P.3d 951].) We first examine the language of the initiative as the best indicator of the voters' intent. (*Kwikset Corp. v. Superior Court* (2011) 51 Cal.4th 310, 321 [120 Cal.Rptr.3d 741, 246 P.3d 877].) We give the words of the initiative their ordinary and usual meaning and construe them in the context of the entire scheme of law of which the initiative is a part, so that the whole may be harmonized and given effect. (*Professional Engineers, supra,* at p. 1037; *State Farm Mutual Automobile Ins. Co. v. Garamendi* (2004) 32 Cal.4th 1029, 1043 [12 Cal.Rptr.3d 343, 88 P.3d 71].)

If the language is unambiguous and a literal construction would not result in absurd consequences, we presume that the voters intended the meaning on the face of the initiative and the plain meaning governs. (*Professional Engineers, supra,* 40 Cal.4th at p. 1037; *Coalition of Concerned Communities,*

*Inc. v. City of Los Angeles* (2004) 34 Cal.4th 733, 737 [21 Cal.Rptr.3d 676, 101 P.3d 563].) If the language is ambiguous, we may consider the analyses and arguments contained in the official ballot pamphlet as extrinsic evidence of the voters' intent and understanding of the initiative. (*Professional Engineers, supra,* at p. 1037.)

The construction of a statute or an initiative, including the resolution of any ambiguity, is a question of law that we review de novo. (*Bruns v. E-Commerce Exchange, Inc.* (2011) 51 Cal.4th 717, 724 [122 Cal.Rptr.3d 331, 248 P.3d 1185].)

### 3. *Historical Foundations of Proposition 26*

#### a. *Proposition 13*

California voters adopted Proposition 13 in June 1978, adding article XIII A to the California Constitution. Proposition 13 "impos[ed] important limitations upon the assessment and taxing powers of state and local governments." (*Amador Valley Joint Union High Sch. Dist. v. State Bd. of Equalization* (1978) 22 Cal.3d 208, 218 [149 Cal.Rptr. 239, 583 P.2d 1281] (*Amador Valley*).) Proposition 13 generally (1) limited the rate of any ad valorem tax on real property to 1 percent; (2) limited increases in the assessed value of real property to 2 percent annually absent a change in ownership; (3) required that " 'any changes in State taxes enacted for the purpose of increasing revenues collected pursuant thereto whether by increased rates or changes in methods of computation' " must be approved by two-thirds of the Legislature; and (4) required that special taxes imposed by cities, counties and special districts must be approved by a two-thirds vote of the electors. (*Amador Valley, supra,* at p. 220, quoting former art. XIII A, § 3, as added by Prop. 13.)

The California Supreme Court in *Amador Valley, supra,* 22 Cal.3d at page 231, stated that the various elements of Proposition 13 formed "an interlocking 'package' " with the purpose of providing effective real property tax relief. *Amador Valley* rejected several constitutional challenges to the initiative. Local governments, however, soon found ways to generate additional revenue without a two-thirds vote of the electors despite Proposition 13. Some of those efforts were approved by the courts.

The California Supreme Court in *Los Angeles County Transportation Com. v. Richmond* (1982) 31 Cal.3d 197, 208 [182 Cal.Rptr. 324, 643 P.2d 941] (*Richmond*), held that a sales tax imposed by the Los Angeles County Transportation Commission and approved by a majority, but less than two-thirds, of county voters was validly adopted. The state Legislature, before the

passage of Proposition 13, had authorized the local commission to adopt a sales tax to fund public transit projects. Writing for a plurality of three justices, Justice Mosk stated that the term " 'special districts' " in section 4 of article XIII A of the California Constitution was ambiguous. (*Richmond, supra,* at p. 201 (plur. opn. of Mosk, J.).) Justice Mosk stated that the requirement of a two-thirds vote imposed by the state's voters on local voters was "fundamentally undemocratic" and that the language of section 4 therefore must be strictly construed in favor of allowing local voters to approve special taxes by a majority vote rather than a two-thirds vote. (*Richmond, supra,* at p. 205 (plur. opn. of Mosk, J.).) Noting that section 4 expressly prohibited cities, counties and special districts from imposing ad valorem taxes on real property or transaction or sales taxes on the sale of real property even with a two-thirds vote, and citing language in the ballot pamphlet, the plurality held that " 'special districts' " under section 4 must be limited to special districts authorized to levy taxes on real property. (*Richmond, supra,* at p. 205 (plur. opn. of Mosk, J.).) Two justices concurred in the judgment and also concluded that the term " 'special districts' " was limited to special districts authorized to levy taxes on real property. (*Richmond, supra,* at p. 209 (conc. opn. of Kaus, J.).)

Justice Richardson stated in a dissent that the sales tax imposed by the local commission served as a convenient substitute for an increase in real property taxes. (*Richmond, supra,* 31 Cal.3d at pp. 212–213 (dis. opn. of Richardson, J.).) The dissent stated that under the holding by the majority, the creation of districts without real property taxing authority provided a means by which local governments could readily avoid the restrictions of Proposition 13. (31 Cal.3d at p. 213 (dis. opn. of Richardson, J.).) The dissent concluded that just as the county would be prohibited from imposing the new tax without a two-thirds vote of its voters, the local commission as the county's surrogate should be prohibited from imposing the new tax without the required voter approval. (*Id.* at p. 215 (dis. opn. of Richardson, J.).)

*City and County of San Francisco v. Farrell* (1982) 32 Cal.3d 47 [184 Cal.Rptr. 713, 648 P.2d 935] held that a payroll and gross receipts tax imposed on businesses operating within the City and County of San Francisco, but not approved by a two-thirds vote of the voters, was valid. *Farrell* concluded that the requirement in section 4 of article XIII A of the California Constitution that " 'special taxes' " imposed by cities, counties and special districts must be approved by a two-thirds vote of the electors applied only to taxes levied for a specific purpose and did not apply to taxes paid into the general fund to be used for general governmental purposes. (*Farrell, supra,* at p. 57.)

*Rider v. County of San Diego* (1991) 1 Cal.4th 1 [2 Cal.Rptr.2d 490, 820 P.2d 1000] found invalid a sales tax imposed by the County of San Diego

for the purpose of financing the construction and operation of criminal detention and courthouse facilities. The tax was enacted without the approval of two-thirds of the voters.[1] Distinguishing *Richmond, supra,* 31 Cal.3d 197, the *Rider* court held that a local agency that the trial court found was created solely for the purpose of circumventing Proposition 13's two-thirds voter approval requirement was a "special district" (Cal. Const., art. XIII A, § 4) despite its lack of authority to levy taxes on real property. (*Rider, supra,* at pp. 8, 10.) *Rider* stated, "To hold otherwise clearly would create a wide loophole in Proposition 13 as feared by the dissent in *Richmond.*" (*Id.* at p. 10.) *Rider* noted a proliferation of governmental entities lacking the power to levy real property taxes raising revenues through sales taxes without the approval of two-thirds of the voters following *Richmond, supra,* 31 Cal.3d 197. (*Rider, supra,* at p. 10.) *Rider* stated that the framers of Proposition 13 and the voters who adopted it could not have "intended to adopt a definition [of 'special districts'] that could so readily permit circumvention of section 4." (*Rider, supra,* at p. 11.) *Rider* held that the term " 'special district' " includes "any local taxing agency created to raise funds for city or county purposes to replace revenues lost by reason of the restrictions of Proposition 13." (*Ibid.*)

*Knox v. City of Orland* (1992) 4 Cal.4th 132 [14 Cal.Rptr.2d 159, 841 P.2d 144] held that a charge levied against real property in the City of Orland for the maintenance of public parks was a "special assessment," and was not a "special tax" within the meaning of section 4 of article XIII A of the California Constitution. *Knox* stated that a special assessment is a charge levied against real property within a particular district for the purpose of conferring a special benefit on the assessed properties beyond any benefit received by the general public. (*Knox, supra,* at pp. 141–142.) A "special tax," in contrast, is imposed to provide benefits to the general public. (*Id.* at pp. 142–143.) *Knox* concluded that the park maintenance charge was a special assessment and therefore was not subject to the two-thirds voter approval requirement. (*Id.* at pp. 140–141, 145.)

b. *Proposition 218*

California voters adopted Proposition 218 in November 1996, adding articles XIII C and XIII D to the California Constitution. Proposition 218 imposed additional voting approval requirements on the imposition of taxes by a local government. Proposition 218 also added to Proposition 13's limitations on ad valorem property taxes and special taxes similar limitations on assessments, fees, and charges relating to real property. (*Apartment Assn. of Los Angeles County, Inc. v. City of Los Angeles* (2001) 24 Cal.4th 830, 837

---

[1] The tax was approved by 50.8 percent, a bare majority of the county voters. (*Rider, supra,* 1 Cal.4th at p. 6.)

[102 Cal.Rptr.2d 719, 14 P.3d 930] (*Apartment Assn.*).) The initiative measure's findings and declaration of purpose stated: "The people of the State of California hereby find and declare that Proposition 13 was intended to provide effective tax relief and to require voter approval of tax increases. However, local governments have subjected taxpayers to excessive tax, assessment, fee and charge increases that not only frustrate the purposes of voter approval for tax increases, but also threaten the economic security of all Californians and the California economy itself. This measure protects taxpayers by limiting the methods by which local governments exact revenue from taxpayers without their consent." (Ballot Pamp., Gen. Elec. (Nov. 5, 1996) text of Prop. 218, § 2, p. 108; see Historical Notes, 2A West's Ann. Cal. Const. (2013 supp.) foll. art. XIII C, § 1, p. 171.)

Section 2, subdivision (a) of article XIII C of the California Constitution, added by Proposition 218, states: "All taxes imposed by any local government shall be deemed to be either general taxes or special taxes. Special purpose districts or agencies, including school districts, shall have no power to levy general taxes." Section 1 of article XIII C defines " '[g]eneral tax' " as "any tax imposed for general governmental purposes" and defines " '[s]pecial tax' " as "any tax imposed for specific purposes, including a tax imposed for specific purposes, which is placed into a general fund." (*Id.*, subds. (a), (d).) Proposition 218 required that all general taxes imposed by a local government must be approved by a majority vote of the electorate and all special taxes imposed by a local government must be approved by a two-thirds vote of the electorate.[2] (Cal. Const., art. XIII C, § 2, subds. (b), (d).) Proposition 218, however, did not define the term "tax."

Section 3, subdivision (a) of article XIII D of the California Constitution, added by Proposition 218, states that the only "taxe[s], assessment[s], fee[s], or charge[s]" that a local government may impose "as an incident of property ownership" are ad valorem property taxes, special taxes approved by two-thirds of the voters, "[a]ssessments as provided by this article," and "[f]ees or charges for property related services as provided by this article." Proposition 218 restricted a local government's ability to impose real property assessments by (1) tightening the definitions of "special benefit" and "proportional-[ity]" (Cal. Const., art. XIII D, §§ 2, subd. (i), 4, subd. (a)); (2) establishing strict procedural requirements for the imposition of an assessment (*id.*, § 4, subds. (b)–(e)); and (3) shifting to the public agency the burden of demonstrating the legality of an assessment (*id.*, § 4, subd. (f)). (*Silicon Valley*

---

[2] California Constitution, article XIII C, section 2, subdivision (b) states, in relevant part, "No local government may impose, extend, or increase any general tax unless and until that tax is submitted to the electorate and approved by a majority vote." Subdivision (d) of section 2 states, in relevant part, "No local government may impose, extend, or increase any special tax unless and until that tax is submitted to the electorate and approved by a two-thirds vote."

*Taxpayers' Assn., Inc. v. Santa Clara County Open Space Authority* (2008) 44 Cal.4th 431, 443–444 [79 Cal.Rptr.3d 312, 187 P.3d 37].) Proposition 218 also established procedural requirements for the imposition of new or increased fees and charges relating to real property and requirements for existing fees and charges. (Cal. Const., art. XIII D, § 6.)

*Apartment Assn., supra,* 24 Cal.4th at page 838, held that article XIII D of the California Constitution restricted only fees imposed on real property owners in their capacity as owners and therefore did not apply to an inspection fee imposed by the City of Los Angeles on property owners in their capacity as landlords.

### c.   *Sinclair Paint Co. v. State Board of Equalization*

In *Sinclair Paint Co. v. State Bd. of Equalization* (1997) 15 Cal.4th 866 [64 Cal.Rptr.2d 447, 937 P.2d 1350] (*Sinclair Paint*), the California Supreme Court decided the question whether fees imposed by the Legislature on manufacturers and others contributing to environmental lead contamination were " 'taxes enacted for the purpose of increasing revenues' " under former section 3 of article XIII A of the California Constitution, and therefore subject to the requirement of a two-thirds vote of the Legislature. (*Sinclair Paint, supra,* at p. 873.) *Sinclair Paint* construed the language " 'taxes enacted for the purpose of increasing revenues' " in former section 3 of article XIII A, which had not been construed in any California appellate opinion, by reference to prior opinions construing the term "special taxes" in section 4 of article XIII A. (*Sinclair Paint, supra,* at pp. 873–881.) *Sinclair Paint* stated:

"The cases recognize that 'tax' has no fixed meaning, and that the distinction between taxes and fees is frequently 'blurred,' taking on different meanings in different contexts. [Citations.] In general, taxes are imposed for revenue purposes, rather than in return for a specific benefit conferred or privilege granted. [Citations.] . . .

"The 'special tax' cases have involved three general categories of fees or assessments: (1) special assessments, based on the value of benefits conferred on property; (2) development fees, exacted in return for permits or other government privileges; and (3) regulatory fees, imposed under the police power." (*Sinclair Paint, supra,* 15 Cal.4th at p. 874.)

*Sinclair Paint* stated that the courts had held that special assessments and development fees satisfying certain requirements were not "special taxes" under article XIII A, section 4 of the California Constitution. (*Sinclair Paint, supra,* 15 Cal.4th at pp. 874–875.) *Sinclair Paint* stated that regulatory fees that do not exceed the reasonable cost of providing the services for which the

fees are charged and are not levied for any unrelated revenue purposes also are not " 'special taxes' " subject to the two-thirds voting requirement of section 4. (*Sinclair Paint, supra,* at p. 876.) *Sinclair Paint* rejected the holding by the Court of Appeal in that case that the fees were not regulatory in nature because the legislation imposing the fees imposed no other conditions on persons subject to the fees. Instead, *Sinclair Paint* concluded that the fees were regulatory because the legislation "requires manufacturers and other persons whose products have exposed children to lead contamination to bear a fair share of the cost of mitigating the adverse health effects their products created in the community." (*Id.* at p. 877.) *Sinclair Paint* stated that such " 'mitigating effects' fees" were just as regulatory in nature as fees imposed on polluters or producers of contaminating products for the initial permit or licensing programs, and that such fees in substantial amounts also regulate future conduct by deterring the conduct subject to the fee and by encouraging research and development of alternative products. (*Ibid.*)

*Sinclair Paint* rejected the argument that the state had no authority to impose the fees, stating that the case law "clearly indicates that the police power is broad enough to include mandatory remedial measures to mitigate the *past, present, or future* adverse impact of the fee payer's operations, at least where, as here, the measure requires a causal connection or nexus between the product and its adverse effects. [Citations.]" (*Sinclair Paint, supra,* 15 Cal.4th at pp. 877–878.) *Sinclair Paint* stated that if the primary purpose of a fee is to regulate rather than to raise revenue, the fee is not a tax. (*Id.* at p. 880.)

### 4. *Proposition 26*

■ California voters approved Proposition 26 on November 2, 2010. Proposition 26 expanded the definition of taxes so as to include fees and charges, with specified exceptions; required a two-thirds vote of the Legislature to approve laws increasing taxes on any taxpayers; and shifted to the state or local government the burden of demonstrating that any charge, levy or assessment is not a tax. Proposition 26 amended section 3 of article XIII A and section 1 of article XIII C of the California Constitution. The initiative was an effort to close perceived loopholes in Propositions 13 and 218 and was largely a response to *Sinclair Paint, supra,* 15 Cal.4th 866. Proposition 26's findings and declaration of purpose stated:

"The people of the State of California find and declare that:

"(a) Since the people overwhelmingly approved Proposition 13 in 1978, the Constitution of the State of California has required that increases in state taxes be adopted by not less than two-thirds of the members elected to each house of the Legislature.

"(b) Since the enactment of Proposition 218 in 1996, the Constitution of the State of California has required that increases in local taxes be approved by the voters.

"(c) Despite these limitations, California taxes have continued to escalate. Rates for state personal income taxes, state and local sales and use taxes, and a myriad of state and local business taxes are at all-time highs. Californians are taxed at one of the highest levels of any state in the nation.

"(d) Recently, the Legislature added another $12 billion in new taxes to be paid by drivers, shoppers, and anyone who earns an income.  .

"(e) This escalation in taxation does not account for the recent phenomenon whereby the Legislature and local governments have disguised new taxes as 'fees' in order to extract even more revenue from California taxpayers without having to abide by these constitutional voting requirements. Fees couched as 'regulatory' but which exceed the reasonable costs of actual regulation or are simply imposed to raise revenue for a new program and are not part of any licensing or permitting program are actually taxes and should be subject to the limitations applicable to the imposition of taxes.

"(f) In order to ensure the effectiveness of these constitutional limitations, this measure also defines a 'tax' for state and local purposes so that neither the Legislature nor local governments can circumvent these restrictions on increasing taxes by simply defining new or expanded taxes as 'fees.' " (Voter Information Guide, Gen. Elec. (Nov. 2, 2010) text of Prop. 26, § 1, p. 114; see Historical Notes, 2A West's Ann. Cal. Const., *supra*, foll. art. XIII A, § 3, pp. 141–142.)

Proposition 26 amended section 3 of article XIII A of the California Constitution to read:

"(a) Any change in state statute which results in any taxpayer paying a higher tax must be imposed by an act passed by not less than two-thirds of all members elected to each of the two houses of the Legislature, except that no new ad valorem taxes on real property, or sales or transaction taxes on the sales of real property may be imposed.

"(b) As used in this section, 'tax' means any levy, charge, or exaction of any kind imposed by the State, except the following:

"(1) A charge imposed for a specific benefit conferred or privilege granted directly to the payor that is not provided to those not charged, and which does

not exceed the reasonable costs to the State of conferring the benefit or granting the privilege to the payor.

"(2) A charge imposed for a specific government service or product provided directly to the payor that is not provided to those not charged, and which does not exceed the reasonable costs to the State of providing the service or product to the payor.

"(3) A charge imposed for the reasonable regulatory costs to the State incident to issuing licenses and permits, performing investigations, inspections, and audits, enforcing agricultural marketing orders, and the administrative enforcement and adjudication thereof.

"(4) A charge imposed for entrance to or use of state property, or the purchase, rental, or lease of state property, except charges governed by Section 15 of Article XI.

"(5) A fine, penalty, or other monetary charge imposed by the judicial branch of government or the State, as a result of a violation of law.

"(c) Any tax adopted after January 1, 2010, but prior to the effective date of this act, that was not adopted in compliance with the requirements of this section is void 12 months after the effective date of this act unless the tax is reenacted by the Legislature and signed into law by the Governor in compliance with the requirements of this section.

"(d) The State bears the burden of proving by a preponderance of the evidence that a levy, charge, or other exaction is not a tax, that the amount is no more than necessary to cover the reasonable costs of the governmental activity, and that the manner in which those costs are allocated to a payor bear a fair or reasonable relationship to the payor's burdens on, or benefits received from, the governmental activity."[3]

Proposition 26 amended section 1 of article XIII C of the California Constitution to read:

_____

[3] Former section 3 of article XIII A of the California Constitution stated, in its entirety, before the enactment of Proposition 26: "From and after the effective date of this article, any changes in State taxes enacted for the purpose of increasing revenues collected pursuant thereto whether by increased rates or changes in methods of computation must be imposed by an Act passed by not less than two-thirds of all members elected to each of the two houses of the Legislature, except that no new ad valorem taxes on real property, or sales or transaction taxes on the sales of real property may be imposed." Proposition 26 amended the first sentence of section 3, designated the first paragraph as subdivision (a), and added subdivisions (b), (c) and (d).

"(a) 'General tax' means any tax imposed for general governmental purposes.

"(b) 'Local government' means any county, city, city and county, including a charter city or county, any special district, or any other local or regional governmental entity.

"(c) 'Special district' means an agency of the state, formed pursuant to general law or a special act, for the local performance of governmental or proprietary functions with limited geographic boundaries including, but not limited to, school districts and redevelopment agencies.

"(d) 'Special tax' means any tax imposed for specific purposes, including a tax imposed for specific purposes, which is placed into a general fund.

"(e) As used in this article, 'tax' means any levy, charge, or exaction of any kind imposed by a local government, except the following:

"(1) A charge imposed for a specific benefit conferred or privilege granted directly to the payor that is not provided to those not charged, and which does not exceed the reasonable costs to the local government of conferring the benefit or granting the privilege.

"(2) A charge imposed for a specific government service or product provided directly to the payor that is not provided to those not charged, and which does not exceed the reasonable costs to the local government of providing the service or product.

"(3) A charge imposed for the reasonable regulatory costs to a local government for issuing licenses and permits, performing investigations, inspections, and audits, enforcing agricultural marketing orders, and the administrative enforcement and adjudication thereof.

"(4) A charge imposed for entrance to or use of local government property, or the purchase, rental, or lease of local government property.

"(5) A fine, penalty, or other monetary charge imposed by the judicial branch of government or a local government, as a result of a violation of law.

"(6) A charge imposed as a condition of property development.

"(7) Assessments and property-related fees imposed in accordance with the provisions of Article XIII D.

"The local government bears the burden of proving by a preponderance of the evidence that a levy, charge, or other exaction is not a tax, that the amount is no more than necessary to cover the reasonable costs of the governmental activity, and that the manner in which those costs are allocated to a payor bear a fair or reasonable relationship to the payor's burdens on, or benefits received from, the governmental activity."[4]

Proposition 26, in an effort to curb the perceived problem of a proliferation of regulatory fees imposed by the state without a two-thirds vote of the Legislature or imposed by local governments without the voters' approval, defined a "tax" to include "any levy, charge, or exaction of any kind imposed by" the state or a local government, with specified exceptions. The question here is whether the paper carryout bag charge constitutes a tax and therefore is subject to one of the two voter approval requirements (Cal. Const., art. XIII C, § 2, subds. (b), (d)).

### 5. *The Paper Carryout Bag Charge Is Not a Tax*

The county contends the paper carryout bag charge is not a tax because it is payable to and retained by the retail store and is not remitted to the county. We agree.

■ The term "tax" in ordinary usage refers to a compulsory payment made to the government or remitted to the government. Taxes ordinarily are imposed to raise revenue for the government (*California Farm Bureau Federation v. State Water Resources Control Bd.* (2011) 51 Cal.4th 421, 437 [121 Cal.Rptr.3d 37, 247 P.3d 112] ["Ordinarily taxes are imposed for revenue purposes and not 'in return for a specific benefit conferred or privilege granted.' "]; *Sinclair Paint, supra,* 15 Cal.4th at p. 874 ["In general, taxes are imposed for revenue purposes, rather than in return for a specific benefit conferred or privilege granted."]; *Morning Star Co. v. Board of Equalization* (2011) 201 Cal.App.4th 737, 750 [135 Cal.Rptr.3d 457]), although taxes may be imposed for nonrevenue purposes as well (see *Washington v. Confederated Tribes* (1980) 447 U.S. 134, 158 [65 L.Ed.2d 10, 100 S.Ct. 2069] ["taxes can be used for distributive or regulatory purposes, as well as for raising revenue . . ."]).

The definition of a "tax" in California Constitution, article XIII C, section 1, subdivision (e) does not explicitly state that the levy, charge or exaction must be payable to a local government, but does state that it must be "imposed by a local government." In light of the ordinary meaning of a "tax" as a

---

[4] Proposition 26 added subdivision (e) to California Constitution, article XIII C, section 1 and left subdivisions (a) through (d) of section 1 unchanged.

compulsory payment made to the government or remitted to the government, we conclude that subdivision (e) is ambiguous as to whether a levy, charge or exaction must be payable to a local government in order to constitute a tax. Our consideration of other language added to article XIII C by Proposition 26 helps to resolve this ambiguity.

■   Subdivision (e) of California Constitution, article XIII C, section 1 lists seven exceptions to the rule that " 'tax' means any levy, charge, or exaction of any kind imposed by a local government" (*ibid.*). The exceptions (quoted *ante*) all relate to charges ordinarily payable to the government, including charges imposed in connection with governmental activities or use of government property, fines imposed by the government for a violation of law, development fees and real property assessments. (*Ibid.*)

The first three exceptions, in particular, state that a charge imposed by a local government is not a tax if the charge does not exceed "the reasonable costs to the local government" of conferring a specific benefit or privilege directly to the payor or providing a specific service or product directly to the payor, and also except from the definition of a tax a charge "for the reasonable regulatory costs to a local government for issuing licenses and permits" and related activities. (Cal. Const., art. XIII C, § 1, subd. (e)(1), (2) & (3).) These exceptions, generally speaking, except from the definition of a "tax" charges not exceeding the reasonable costs to the local government of providing specific benefits or regulatory services. These exceptions do not contemplate the situation where a charge is paid to an entity or person other than a local government or where such an entity or person incurs reasonable costs. In our view, this suggests an understanding that the language "any levy, charge, or exaction of any kind imposed by a local government" in the first paragraph of article XIII C, section 1, subdivision (e) is limited to charges payable to a local government. This is consistent with the ordinary meaning of the term "tax."[5]

No reason appears on the face of Proposition 26, or from our consideration of the voter information guide and the historical foundations of the initiative,

---

[5] None of the seven exceptions expressly refers to the reasonable costs to a nongovernmental entity or person or to activities undertaken by or payments typically made to a nongovernmental entity or person. Consideration of the final paragraph of California Constitution, article XIII C, section 1, subdivision (e) supports the view that the exceptions all refer to activities directly undertaken by the local government. The final paragraph states, "The local government bears the burden of proving by a preponderance of the evidence that a levy, charge, or other exaction is not a tax, that the amount is no more than necessary to cover the reasonable costs of *the governmental activity*, and that the manner in which those costs are allocated to a payor bear a fair or reasonable relationship to the payor's burdens on, or benefits received from, *the governmental activity.*" (Italics added.) Use of the term "the governmental activity" as a shorthand reference for the activities described in the exceptions suggests that the exceptions all refer to activities undertaken directly by the local government.

to conclude that the voters approving the initiative intended the definition of a "tax" to include both charges payable to a local government and charges payable to a nongovernmental entity or person, while limiting the "reasonable costs" exceptions to charges payable to a local government. In other words, there is no reason to believe that the voters approving Proposition 26 intended to except from the definition of a "tax" and, consequently, from the voter approval requirements, charges payable to a local government not exceeding the reasonable costs of providing specific benefits or regulatory activities, but intended the same charges if made payable to another person or entity in an amount not exceeding the reasonable costs to be considered taxes subject to the voter approval requirements.

The analysis and arguments for and against the initiative in the official voter information guide discussed the impact of the initiative on the ability of local government to raise revenues. The analysis by the Legislative Analyst stated, "Generally, the types of fees and charges that would become taxes under the measure are ones that government imposes to address health, environmental, or other societal or economic concerns." (Voter Information Guide, *supra*, analysis of Prop. 26 by Legis. Analyst, p. 58.) A chart listed several examples of regulatory fees that could be considered taxes under the measure, stating as to each one that the state or local government "uses the funds" for specified purposes, necessarily implying that the fees were payable to the government. There was no discussion in the voter information guide of any charges or fees payable to a nongovernmental entity or person and nothing to suggest to the voters that Proposition 26 would have any impact on such charges or fees.[6]

▮ Accordingly, we conclude that the language "any levy, charge, or exaction of any kind imposed by a local government" in the first paragraph of

---

[6] Another part of the Legislative Analyst's analysis provided other examples of regulatory fees, including "fees on the purchase of beverage containers to support recycling programs." (Voter Information Guide, *supra*, analysis of Prop. 26 by Legis. Analyst, p. 56.) The California Beverage Container Recycling and Litter Reduction Act (Pub. Resources Code, § 14500 et seq.) requires a payment by the distributor to the Department of Resources Recycling and Recovery for each beverage container sold or transferred to a retailer. (*Id.*, § 14574.) The burden of the distributor's payment is passed on to the consumer through a fee charged by the retailer. The payments are deposited into a fund in the State Treasury and used for the administration of the recycling program. (*Id.*, §§ 14574, 14580, subd. (a).) Here, in contrast, the paper carryout bag charge is retained by the retailer, and no payment is made into any government fund. Contrary to Petitioners' argument, the charge here is not akin to a beverage container fee, and the reference in the ballot materials to beverage container fees did not suggest to the voters that a charge such as the paper carryout bag charge would be considered a tax.

California Constitution, article XIII C, section 1, subdivision (e) is limited to charges payable to, or for the benefit of, a local government.[7]

■ Petitioners note that Proposition 26 deleted the language "any change in state taxes enacted for the purpose of increasing revenues collected pursuant thereto" in article XIII A, section 3 of the California Constitution and replaced it with "[a]ny change in state statute which results in any taxpayer paying a higher tax." Petitioners argue that this amendment indicates an intent to eliminate the prior requirement that a charge must produce revenue for the government to be considered a tax. We disagree. This amendment was to the provision requiring approval by two-thirds of the Legislature for any increase in state taxes. The provisions requiring voter approval for increases in local taxes (Cal. Const., arts. XIII A, § 4, XIII C, § 2), in contrast, never included the language "for the purpose of increasing revenues" or any similar limiting language. The purpose of this amendment to article XIII A, section 3 was to end the Legislature's practice of approving by a simple majority vote so-called "revenue-neutral" laws that increased taxes for some taxpayers but decreased taxes for others. The Legislative Analyst's analysis in the official voter information guide stated:

"*Current Requirement.* The State Constitution currently specifies that laws enacted 'for the purpose of increasing revenues' must be approved by two-thirds of each house of the Legislature. Under current practice, a law that increases the amount of taxes charged to some taxpayers but offers an equal (or larger) reduction in taxes for other taxpayers has been viewed as not increasing revenues. As such, it can be approved by a majority vote of the Legislature.

"*New Approval Requirement.* The measure specifies that state laws that result in *any* taxpayer paying a higher tax must be approved by two-thirds of each house of the Legislature." (Voter Information Guide, *supra*, analysis of Prop. 26 by Legis. Analyst, pp. 58–59, boldface omitted.)

■ Accordingly, we conclude that the amendment to California Constitution, article XIII A, section 3 does not support Petitioners' position. The paper carryout bag charge is payable to and retained by the retail store providing the bag, which is required to use the funds for specified purposes. The charge is not remitted to the county. Because the charge is not remitted to the county and raises no revenue for the county, we conclude that the charge is not a "tax" for purposes of article XIII C of the California Constitution. The voter approval requirements of article XIII C, section 2

---

[7] A charge payable to a third party creditor to extinguish a debt owed by a local government, for example, would effectively be equivalent to a payment made to the local government.

therefore are inapplicable. In light of our conclusion, we need not decide whether, if the charge were otherwise considered a tax, any of the specified exceptions would apply.

## DISPOSITION

The judgment is affirmed. Respondents are entitled to recover their costs on appeal.

Kitching, J., and Aldrich, J., concurred.

On March 11, 2013, the opinion was modified to read as printed above. Appellants' petition for review by the Supreme Court was denied May 15, 2013, S209633. Kennard, J., and Corrigan, J., were of the opinion that the petition should be granted.