Filed 3/3/16  Santa Barbara Design & Build v. Pollack CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| SANTA BARBARA DESIGN & BUILD,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>GARY POLLACK et al.,<br><br>    Defendants and Appellants. | 2d Civil No. B259076<br>(Super. Ct. No. 56-2012-<br>00425452-CU-BC-VTA)<br>(Ventura County) |

Appellants Gary Pollack and Claudia Davidovich and respondent Santa Barbara Design & Build (SBDB) became embroiled in a billing dispute regarding SBDB's remodel of appellants' beach home.  The trial court ruled in favor of SBDB on all issues and entered a judgment of foreclosure on the property to satisfy SBDB's mechanic's lien.  Appellants contend that no evidence supports the trial court's finding that SBDB did not pad its labor rates. We need not reach this issue, however, because we interpret the contract differently than the trial court.  We conclude that the contract required appellants to pay the labor rates set forth in the attachment.[1]  Accordingly, we affirm.

_____

    [1] Following submission of this matter, the parties provided supplemental letter briefs on this issue at our request.

FACTS AND PROCEDURAL HISTORY

Appellants hired SBDB to remodel and renovate their beach house in Ventura's Pierpont neighborhood. The contract called for appellants to pay SBDB a $58,000 project management fee plus reimbursement for its "direct 'cost of work,'" defined as "cost necessarily and reasonably incurred in the performance of the work and actually paid by the contractor . . . ." An attachment to the contract (attachment) contained a list of workers whom SBDB employed and their hourly rates. Appellants became concerned about the amounts they were being charged for labor after discovering a pay stub for one of the workers showing that he was being paid an hourly rate of $19 when SBDB was charging them an hourly rate of $29 for his work.

SBDB performed the agreed-upon work and appellants paid all amounts billed by SBDB—approximately $500,000—except for the final $8,511.60 payment, which appellants withheld on the ground that they had been overcharged for labor. SBDB sued appellants to recover the amount of the final bill. Appellants counterclaimed, alleging among other things that SBDB inflated its labor rates above what it actually paid its workers. After a bench trial, the court ruled that SBDB was entitled to bill not only for the hourly wages it paid to its employees (the base rates), but also for "necessary other costs such as workers compensation, payroll taxes, safety training and the like." The trial court found that SBDB's "loaded rates"—the base rates plus an additional amount per hour to cover its other labor-related costs—were not padded.

DISCUSSION

Appellants contend that no evidence supports the trial court's finding that the labor rates for which SBDB billed them did not exceed its actual costs. We review this factual finding for substantial evidence. (*Schmeer v. County of Los Angeles* (2013) 213 Cal.App.4th 1310, 1316.) The contractual interpretation upon which it rests, however, is an issue "to which we apply de

novo review." (*Judicial Council of California v. Jacobs Facilities, Inc.* (2015) 239 Cal.App.4th 882, 907.) "[W]e may affirm the trial court's ruling 'on any basis presented by the record whether or not relied upon by the trial court.' [Citation.]" (*McClain v. Octagon Plaza, LLC* (2008) 159 Cal.App.4th 784, 802.)

The trial court concluded that the contract attachment contained SBDB's "anticipated labor rate[s]," noting that Don Gragg, SBDB's owner and general contractor, "conceded that the rate on the contract attachment was intended as an estimate." To the contrary, Gragg's "testimony [was] that these labor rates were intended to be and were accepted by [appellants] to be the agreed upon rates that would be paid regardless of what [he] actually paid" his employees. He referred to the rates as an "estimate" not in the sense of what he anticipated his labor rates *would* be but rather what he approximated his labor costs *were* when allocated per employee per hour.

Ultimately, what the parties subjectively thought about the rates' significance is irrelevant. "The terms of a contract are determined by objective rather than subjective criteria." (*Tribeca Companies, LLC v. First American Title Insurance Company* (2015) 239 Cal.App.4th 1088, 1111.) We conclude that the contract objectively required appellants to pay the labor rates set forth on the attachment.

The contract required SBDB to provide appellants with a billing statement every two weeks, accompanied by "a copy of all back-up documentation including material procurement invoices, payrolls for the labor (see [attachment]) and all receipted bills for which payment is due." The attachment listed various employees, their number of hours worked, their loaded rates, and the "Amount Due"—the hours multiplied by the rate. The "Hours" and "Amount Due" columns were zeroed out but the "Rate" column had specific rates listed for each employee, suggesting that these were the actual rates that would be used in the billing statements.

3

It is true that appellants agreed to pay only costs "necessarily and reasonably incurred" and "actually paid by the contractor." However, in the labor context, this clause merely guaranteed that SBDB would not bill appellants for too many hours, whether due to inefficiency or fraud. It did not give appellants license to scrutinize whether SBDB's calculation of its loaded rates was reasonable. By signing the contract, appellants agreed that the rates on the attachment *were* reasonable. It would have been impossible for SBDB to calculate the loaded rates with exactitude because they included fixed labor costs allocated on a variable basis, which necessarily involved a certain amount of discretion. Appellants' interpretation of the contract is unreasonable because it would render a material term—the loaded rates—indefinite. (See Civ. Code, § 1643 ["A contract must receive such an interpretation as will make it lawful, operative, definite, reasonable, and capable of being carried into effect, if it can be done without violating the intention of the parties"].)

Two of SBDB's employees at issue, Juan Gudino and Luis Ortega, did not appear on the attachment. Appellants presented no evidence at trial showing that the rates billed for these employees did not fairly represent SBDB's labor costs attributable to them.[2] The ratios of their loaded rates to base rates were in line with those of SBDB's other employees. Therefore, substantial evidence supports the trial court's finding that Gudino's and Ortega's loaded rates were not padded.

---

[2] Appellants assert that they were billed hourly base rates of $21 for Gudino and $16 for Ortega but that SBDB actually paid Gudino only $17 and Ortega only $12. This assertion is incorrect in two respects. First, SBDB billed appellants using loaded rates, not base rates. Second, the page appellants cite in the record to support their assertion lists SBDB's estimated base rates for certain employees, but Gudino and Ortega are not among them.

4

DISPOSITION

The judgment is affirmed.  Costs to respondent.

<u>NOT TO BE PUBLISHED.</u>


PERREN, J.


We concur:


GILBERT, P. J.


YEGAN, J.

Henry J. Walsh, Judge

Superior Court County of Ventura

_____


James P. Thompson for Defendants and Appellants.

Lowthorp, Richards, McMillan, Miller & Templeman and Cristian R. Arrieta for Plaintiff and Respondent.