[No. A099453. First Dist., Div. Five. Apr. 25, 2003.]

ALLIANCE FOR A BETTER DOWNTOWN MILLBRAE et al., Plaintiffs and Respondents, v.
CHERYL MITCHELL WADE, as City Clerk, etc., Defendant and Appellant.

126

---

**COUNSEL**

Hanson, Bridgett, Marcus, Vlahos & Rudy, Michael A. Duncheon, Joan L. Cassman, and Stephen B. Peck for Defendant and Appellant.

Fogarty & Watson, Janet Fogarty & Associates, Mark C. Watson and Dennis Scott Zell for Plaintiffs and Respondents.

## Opinion

**GEMELLO, J.**—Does a city elections official have authority to refuse to certify an initiative petition based on extrinsic evidence relating to the manner of its circulation? We conclude that she does not, and that an elections official's role in certifying an initiative petition is confined to the ministerial task of examining the four corners of the petition for compliance with submission requirements. Here, a city clerk refused to certify an initiative petition after deciding based on extrinsic evidence that it was circulated in violation of state law. This fact finding exceeded the scope of the clerk's lawful ministerial duties, and the trial court properly issued a writ of mandate directing the clerk to certify the initiative petition. Therefore, we affirm.

### Factual and Procedural Background

In June 2001, respondent Alliance for a Better Downtown Millbrae (Alliance) circulated a petition seeking to have the "Downtown Zoning Initiative" (DZI) placed on the Millbrae ballot. If passed, the DZI would have amended Millbrae's zoning ordinance to restrict the density of restaurants, adult businesses, and certain other establishments in a specific section of downtown Millbrae. After obtaining approximately 1,500 signatures, the Alliance submitted the DZI petition (Petition) to the Millbrae City Clerk, appellant Cheryl Mitchell Wade, for certification of the signatures. It submitted the Petition in sections. Each section consisted of a notice of intention to circulate the Petition, the proposed initiative text, a map of the affected area, and a signature sheet. The signature sheet contained the title and summary of the DZI on the front, along with spaces for three signatures, and spaces for seven signatures and a circulator's declaration on the back.

The city clerk refused to certify the Petition and returned it to the Alliance. In her accompanying letter, she explained that she had determined that the Petition violated state law because (1) it did not include the title and summary of the DZI on every signature page (Elec. Code, § 9203, subd. (b))[1] and (2) she believed the notice of intention to circulate the petition and the full text of the DZI had not been circulated with each signature sheet (§§ 9201, 9207).

The Alliance immediately filed for a writ of mandate, and the trial court issued the writ. The trial court concluded that the Alliance had substantially complied with applicable state election law and directed the city clerk to set

---

[1]All further statutory references are to the Elections Code unless otherwise noted.

aside her rejection of the Petition and continue processing it in the manner required by law. In compliance with the writ, the city clerk forwarded the Petition to the San Mateo County Clerk, the custodian of voter registration records, who certified that the Petition contained a sufficient number of valid signatures. Before certifying the Petition to the Millbrae City Council, the city clerk filed a timely notice of appeal.

DISCUSSION

### I. *The Appeal Is Not Moot*

■ Preliminarily, the Alliance contends that this appeal is moot and that the city clerk has waived her right to appeal. The Alliance bases these arguments on the assertion that the city clerk voluntarily complied with the writ of mandate by forwarding the Petition to the county clerk for verification of signatures. We reject these contentions.

Generally, an appeal will be dismissed as "moot when any ruling by this court can have no practical impact or provide the parties effectual relief. [Citation.]" (*Woodward Park Homeowners Assn. v. Garreks, Inc.* (2000) 77 Cal.App.4th 880, 888 [92 Cal.Rptr.2d 268]; see *Paul v. Milk Depots, Inc.* (1964) 62 Cal.2d 129, 132 [41 Cal.Rptr. 468, 396 P.2d 924].) That rule has no application here. This is not a case in which no effective relief can be obtained. The Petition has not been certified to the Millbrae City Council and has not appeared on any ballot. Were we to agree with one or more of the city clerk's contentions and reverse the trial court's judgment, the city clerk would be under no obligation to certify the Petition. This case presents a live, actual controversy.

■ We likewise dismiss the notion that the city clerk has waived her appeal rights. Alliance's waiver argument rests entirely on *City of Carmel-by-the-Sea v. Board of Supervisors* (1982) 137 Cal.App.3d 964 [187 Cal.Rptr. 379] (*Carmel*). In *Carmel*, the court held that when a government body voluntarily complies with a peremptory writ, it waives its right to appeal those portions of the writ with which it has voluntarily complied. (*Id.* at p. 970.) Here, the city clerk has forwarded the Petition to the county clerk for verification of signatures but has not certified it to the city council. She has not voluntarily complied in any meaningful way with the trial court's order to accept the Petition as substantially compliant with the state election law. We conclude that no waiver has occurred.

### II. *Standard of Review*

■ Code of Civil Procedure section 1085, providing for writs of mandate, permits challenges to ministerial acts by local officials. To obtain such

a writ, the petitioner must show (1) a clear, present, ministerial duty on the part of the respondent and (2) a correlative clear, present, and beneficial right in the petitioner to the performance of that duty. (*Santa Clara County Counsel Attys. Assn. v. Woodside* (1994) 7 Cal.4th 525, 539-540 [28 Cal.Rptr.2d 617, 869 P.2d 1142]; *County of Del Norte v. City of Crescent City* (1999) 71 Cal.App.4th 965, 972 [84 Cal.Rptr.2d 179].) A ministerial duty is an act that a public officer is obligated to perform in a prescribed manner required by law when a given state of facts exists. (*Transdyn/Cresci JV v. City and County of San Francisco* (1999) 72 Cal.App.4th 746, 752 [85 Cal.Rptr.2d 512].)

█ On appeal following a trial court's decision on a petition for a writ of mandate, the reviewing court " 'need only review the record to determine whether the trial court's findings are supported by substantial evidence.' " (*Lake v. Reed* (1997) 16 Cal.4th 448, 457 [65 Cal.Rptr.2d 860, 940 P.2d 311], quoting *Bixby v. Pierno* (1971) 4 Cal.3d 130, 143, fn. 10 [93 Cal.Rptr. 234, 481 P.2d 242].) However, we review questions of law independently. (*Corrigan v. Zolin* (1996) 47 Cal.App.4th 230, 234 [54 Cal.Rptr.2d 634].) Where, as here, the facts are undisputed and the issue involves statutory interpretation, we exercise our independent judgment and review the matter de novo. (*International Federation of Professional & Technical Engineers v. City and County of San Francisco* (1999) 76 Cal.App.4th 213, 224 [90 Cal.Rptr.2d 186].)

III.  *The Petition Complies with Section 9203, Subdivision (b)*

As a primary reason for rejecting the Petition, the city clerk concluded that it violated section 9203, subdivision (b). The trial court disagreed, finding substantial compliance with the statute. Because there is no dispute over the format of the Petition presented to the city clerk and the issue hinges entirely on the interpretation of section 9203, subdivision (b), we review the matter de novo.

Sections 9200 to 9226 spell out the manner in which the people may exercise their constitutional right to pass city ordinances by initiative. (See Cal. Const., art. II, §§ 8, subd (a), 11, subd. (a).) Under section 9203, subdivision (a), an initiative proponent must submit the proposed measure in advance to an elections official who will forward it to the city attorney. In turn, the city attorney must prepare a title and a true and impartial summary of the proposed measure. █ Section 9203, subdivision (b) governs placement of the title and summary, and requires that "[t]his title and summary must . . . be printed across the top of each page of the [initiative]

petition whereon signatures are to appear." In other words, every single petition signature page must include the title and summary of the proposed measure. Here, it is undisputed that each signature sheet contained the title and summary on the front, but not the back. What the statute does not specify, and what we must decide, is whether "each page" means "each side of a sheet of paper" or "each sheet of paper." The city clerk insisted upon the first definition in rejecting the Petition, while the Alliance argued, and the trial court implicitly agreed, that the statute adopts the second definition.

Both the city clerk and the Alliance have requested that we take judicial notice of their respective preferred dictionary definitions for the word "page." We deny these requests as unhelpful to our decision. (See *Mangini v. R. J. Reynolds Tobacco Co.* (1994) 7 Cal.4th 1057, 1063 [31 Cal.Rptr.2d 358, 875 P.2d 73].) We take as a given the fact that in common usage the word "page" may refer either to each side of a sheet of paper, or to the sheet of paper as a whole. Which definition is intended in section 9203, subdivision (b) cannot be decided based on the order in which these alternate definitions are listed in one or more dictionaries; it can only be gleaned from context. Considering the use of "page" in context and in light of the evident purposes behind the statutory requirement, we conclude that the Legislature intended to require only that a proposed measure's title and summary be printed on every sheet containing signatures, not every side of each sheet of paper containing signatures.

Initiative summaries may be as long as 500 words. (§ 9203, subd. (a).) Consequently, a summary may consume a considerable portion of a side of paper. Here, for instance, the city attorney prepared a 418-word summary. Even in eight-point type, this summary takes up fully two-thirds of the available space on a side of an eight and one-half by eleven-inch sheet of paper and leaves room for only three signatures. A maximum-length summary would leave no more than an inch or two and room for at most one signature. In addition, section 9209 requires that each section of a petition contain a declaration from the person soliciting signatures addressing the manner in which signatures were obtained. (§§ 104, 9022, 9209.) If the declaration were included on each signature sheet, as was done here, the declaration and a full-length summary would leave no room at all for any actual signatures. Such a construction is strained and impractical, and we conclude that it is not required by the purposes underlying the impartial title and summary reprint requirement.

The title and summary reprint requirement serves two related purposes. Primarily, it reduces the risk that voters will be misled when asked to sign a

petition to qualify a proposed measure for the ballot by making available to them a neutral explanation of the measure. (*Amador Valley Joint Union High Sch. Dist. v. State Bd. of Equalization* (1978) 22 Cal.3d 208, 243 [149 Cal.Rptr. 239, 583 P.2d 1281]; *Songstad v. Superior Court* (2001) 93 Cal.App.4th 1202, 1211 [113 Cal.Rptr.2d 729].) Secondarily, it allows election officials to verify after the fact that the signers had the neutral explanation of the measure available to them when they signed, and it prevents signatures from being submitted in support of a measure different than the one for which they were procured. These purposes are served as well by a requirement that the title and summary appear on each sheet of paper as by a requirement that they appear on each side of every sheet of paper. This is particularly so where, as here, the numbering of the signature spaces on the back of each sheet (beginning with a space denoted number 4) alerts potential signers to the presence of additional text on the front, which they might choose to inspect. Consequently, we conclude that the sensible and correct interpretation of section 9203, subdivision (b) requires only that the title and summary of a proposed measure be reprinted on every sheet of paper on which signatures in support of the measure appear. The Alliance complied with this requirement, and the city clerk erred when she refused to certify the Petition on this ground.[2]

IV. *The City Clerk Exceeded Her Authority by Rejecting the Petition for Noncompliance with Sections 9201 and 9207 Based on Extrinsic Evidence*

The city clerk offered as a second reason for her rejection of the Petition its noncompliance with sections 9201 and 9207. We conclude that in making this determination, she exceeded her ministerial authority.

Section 9201 governs the manner of submission of an initiative petition to a municipality. It provides: "Any proposed ordinance may be submitted to the legislative body of the city by a petition filed with the elections official of the legislative body . . . . The petition may be in separate sections, providing that the petition complies with this article. The first page of each section shall contain the title of the petition and the text of the measure. . . ." ■ On its face, section 9201 mandates only that the full text of a proposed measure must be attached to each section of a petition

---

[2]We note that even if "page" were interpreted to mean a single side of a sheet of paper, the petition as submitted would substantially comply with section 9203 because the summary statement on one side of the sheet of paper informs the signer of the content of the proposed initiative, thereby providing " 'the substance essential to every reasonable objective of the statute.' " (*Assembly v. Deukmejian* (1982) 30 Cal.3d 638, 649 [180 Cal.Rptr. 297, 639 P.2d 939], quoting *Stasher v. Harger-Haldeman* (1962) 58 Cal.2d 23, 29 [22 Cal.Rptr. 657, 372 P.2d 649].)

when it is submitted to a city elections official; it says nothing about the manner of circulation. However, the statute's full text requirement has been interpreted to apply to the manner of circulation as well. (*Mervyn's v. Reyes* (1998) 69 Cal.App.4th 93, 101-104 [81 Cal.Rptr.2d 148] (*Mervyn's*).) "The purpose of the full text requirement is to provide sufficient information so that registered voters can intelligently evaluate whether to sign the initiative petition and to avoid confusion." (*Id.* at p. 99.) That purpose can only be effectuated if the circulated petition includes the full text of the proposed measure. For purposes of our analysis, we accept *Mervyn's* conclusion that each section of a petition must be circulated with the full text of the proposed measure attached.

Section 9207, entitled "Circulation of petition; petition contents," expressly governs the form of a petition during circulation. Section 9207 provides in relevant part, "The proponents [of a petition] may commence to circulate the petitions among the voters of the city for signatures by any registered voter of the city . . . . Each section of the petition shall bear a copy of the notice of intention . . . ."[3] Decisions interpreting section 9207 confirm what the plain text suggests: during circulation, each section of a petition must include a copy of the notice of intention to circulate. (*Myers v. Patterson* (1987) 196 Cal.App.3d 130, 135 [241 Cal.Rptr. 751] (*Myers*); see also 83 Ops.Cal.Atty.Gen. 139, 140 (2000).) The inclusion of this notice serves an important educational function: its statement of reasons may help inform the voter's decision, and "[a] voter may reasonably seek to judge the precise effect of a measure by knowledge of those who advocate or oppose its adoption . . . ." (*Myers,* at p. 139.)

Neither section 9201 nor section 9207 spells out a specific enforcement mechanism for its requirements. However, as the city clerk correctly points out, numerous cases recognize that local elections officials have a ministerial duty to reject initiative petitions that violate one or more statutory procedural requirements. (*Farley v. Healey* (1967) 67 Cal.2d 325, 327 [62 Cal.Rptr. 26, 431 P.2d 650] (*Farley*) [acting registrar of voters has ministerial duty to ascertain whether statutory requirements for submitting an initiative have been met]; *Billig v. Voges* (1990) 223 Cal.App.3d 962, 968-969 [273 Cal.Rptr. 91] (*Billig*) [same for referendum]; *Myers, supra,* 196 Cal.App.3d at pp. 136-137 [registrar of voters did not exceed his ministerial authority when he rejected a petition submitted without the notice of intention and statement required by statute]; 83 Ops.Cal.Atty.Gen., *supra,* at p. 140 [city

---

[3]The notice of intention to circulate is prepared by proponents of a proposed measure before circulation. It may include a statement of reasons in support of the measure of up to 500 words, and must be signed by between one and three proponents. (§ 9202, subd. (a).)

clerk may reject petition that does not contain notice of intent as required by § 9202].) This ministerial duty exists even when the procedural statute contains no express authorization to the local elections official to enforce its provisions. (*Billig*, at p. 969.)

While these cases grant local elections officials authority to review initiative petitions for compliance with procedural prerequisites, they also place clear limits on that authority. Under *Farley*, an elections official's "duty is limited to the ministerial function of ascertaining whether the procedural requirements for *submitting* an initiative measure have been met." (*Farley, supra,* 67 Cal.2d at p. 327, italics added.) Applying *Farley*, *Billig* upheld a city clerk's rejection of a referendum petition for failure to include the full text of the proposed measure. (*Billig, supra,* 223 Cal.App.3d at pp. 964, 968-969.) In doing so, it emphasized that the clerk was "only performing a ministerial function involving no exercise of discretion." (*Id.* at p. 969.) *Myers* likewise found a ministerial duty to reject a proposed measure that was defective as submitted. (*Myers, supra,* 196 Cal.App.3d at p. 136.)

The California Supreme Court recognized these limits on local elections official authority long ago. In *Ley v. Dominguez* (1931) 212 Cal. 587 [299 P. 713], a city clerk refused to certify two referendum petitions based in part on extrinsic evidence. The Supreme Court issued a writ of mandate directing the city clerk to reexamine the petitions. It held that the applicable city charter provisions conferred "[n]o power of investigation or examination." (*Id.* at p. 601.) Thus, the city clerk was confined to an examination of the petition and voter registration rolls. (*Id.* at pp. 595-596, 601.) It concluded by noting that the "duties and powers of the city clerk in reference to his examination of referendum petitions[] . . . are purely ministerial and not judicial." (*Id.* at p. 602.)

Collectively, these cases only authorize local elections officials to review a petition as submitted for compliance with procedural requirements, absent an express grant of broader powers. They foreclose elections official decisions that are discretionary or go beyond a straightforward comparison of the submitted petition with the statutory requirements for petitions.

Here, the Petition as *submitted* to the city clerk complied with sections 9201 and 9207. The full text of the proposed measure was provided in each section, and the notice of intention was included as well. The city clerk went beyond the face of the Petition and concluded that the full text and notice of intention had been added only after circulation, and that the sections had not been *circulated* in compliance with the requirements of sections 9201 and

9207. She deduced this from four pieces of evidence: (1) in some instances, the signature page showed greater wear than the full text page and notice of intention page, (2) unidentified third parties informed her that they had seen some circulators circulate sections of the Petition without the full text and notice of intention, (3) a folder containing signature pages without the notice of intention or full text attached was left in the city council chambers, and (4) the city clerk believed the proponents had violated the Elections Code in the past with respect to matters unrelated to the submission of the Petition.

This sort of decisionmaking is fundamentally different from the ministerial duties countenanced by *Farley, Billig,* and *Myers.* It involves not a straightforward comparison of the submitted petition with clear statutory directives (Is the full text attached? Is there a circulator's signed declaration?) but a discretionary evaluation of evidence, including evidence extrinsic to the Petition itself, to reach a factual conclusion not evident from the face of the Petition. Unlike these earlier cases, here, reasonable minds could differ as to what inferences to draw from the evidence before the city clerk. The limited record before the city clerk and before us does not establish whether sections 9201 and 9207 were violated or how many signatures might have been affected by any violations. The city clerk's decision involves the sort of discretionary, adjudicatory decisionmaking reserved for judges and juries.[4]

The city clerk points to *Mapstead v. Anchundo* (1998) 63 Cal.App.4th 246 [73 Cal.Rptr.2d 602] (*Mapstead*) as authority for her action. In *Mapstead,* referendum proponents challenged a county registrar's refusal to certify a referendum petition after he determined that it had an insufficient number of signatures. The registrar made this finding pursuant to a specific statute, section 9114, which requires that elections officials compare the signatures on a submitted petition with those maintained as part of the voter rolls. The statutory scheme also regulates how elections officials are to make these factual findings, outlining a procedure for randomly sampling signatures and specifying the evidence upon which they may rely. (§§ 9114-9115.) The *Mapstead* court applied a deferential standard of review and upheld the registrar's factfinding, concluding that his decision was not unreasonable, arbitrary, or fraudulent. (*Mapstead,* at pp. 269, fn. 15, 272.) Based on

---

[4]The city clerk's requests for an evidentiary hearing before the trial court effectively demonstrate that her decision to reject the Petition rested on a contested factual issue. In her pleadings and at the writ hearing, the city clerk sought an evidentiary hearing to address whether sections 9201 and 9207 were violated. On appeal, she reiterates that this issue is a factual one. We agree, but we conclude not that the trial court erred by failing to conduct an evidentiary hearing, but that the city clerk exceeded the scope of her authority by conducting her own discretionary factfinding.

*Mapstead*, the city clerk argues that she was entitled to engage in factfinding and that the trial court was required to defer to her factual determinations.

We draw from *Mapstead* and sections 9114 and 9115 a significantly different lesson—that when the Legislature intends a factfinding role for elections officials, it says so expressly. *Mapstead* involved an explicit statutory structure authorizing elections officials to conduct factfinding on the limited question of the authenticity and validity of voter signatures. (§§ 9114-9115.) Even then, the governing statute channels that factfinding by barring clerks from considering extrinsic evidence. (§ 9114; *Mapstead, supra,* 63 Cal.App.4th at p. 267.) Here, nothing in sections 9201 or 9207 authorizes elections officials to engage in discretionary factfinding or to consider extrinsic evidence.

The city clerk argues that neither section 9201 nor section 9207 limits her to considering only the face of the Petition in carrying out her duties. We frame the issue differently: Neither section 9201 nor section 9207 authorizes a local elections official to evaluate the credibility of unidentified third parties, consider extrinsic evidence, and make an adjudicative decision concerning whether the election laws have been violated. In the absence of explicit legislative authorization, we conclude that such powers are not granted to elections officials.

This conclusion rests as well on a consideration of the rights at stake. ■ "[T]he courts have described the initiative and referendum as articulating 'one of the most precious rights of our democratic process' [citation]. '[I]t has long been our judicial policy to apply a liberal construction to this power wherever it is challenged in order that the right be not improperly annulled. If doubts can reasonably be resolved in favor of the use of this reserve power, courts will preserve it.' [Citations.]" (*Associated Home Builders etc., Inc. v. City of Livermore* (1976) 18 Cal.3d 582, 591 [135 Cal.Rptr. 41, 557 P.2d 473, 92 A.L.R.3d 1038], fn. omitted.) The vesting of elections officials with a broad factfinding power that can be wielded to prevent proposed measures from reaching the ballot creates at least the potential for abuse and could impair the power of initiative and referendum. We decline to find such a broad factfinding power by implication.

This is not to say that initiative circulators are free to ignore the requirements of the Elections Code, only that local elections officials are not empowered to adjudicate every potential violation. ■ Local elections officials may refuse to certify a proposed measure if noncompliance is manifest on the face of the submitted petition. In all other instances, the

courts offer an adequate forum for enforcing the provisions of the Elections Code because proposed measures are susceptible to legal challenge by interested parties. (See, e.g., *Mervyn's, supra,* 69 Cal.App.4th 93; *San Francisco Forty-Niners v. Nishioka* (1999) 75 Cal.App.4th 637 [89 Cal.Rptr.2d 388].) "If fraud has been committed, a court of equity and not the city clerk is the proper forum to determine the matter in the appropriate proceedings." (*Ley v. Dominguez, supra,* 212 Cal. at p. 602.)

In sum, we find no authority in the statutory structure for a local elections official to exercise adjudicative powers and consider extrinsic evidence in determining whether a submitted initiative petition complies with the Elections Code. Because on its face the Petition complied with applicable Elections Code requirements, the city clerk had a ministerial duty to accept it. The Alliance has shown a clear and present entitlement to have the city clerk certify the Petition to the Millbrae City Council under sections 9114 and 9211.[5]

### DISPOSITION

The judgment is affirmed. In the interests of justice, each side shall bear its own costs.

Stevens, Acting P. J., and Simons, J., concurred.

---

[5]The city clerk also appealed the trial court's award of attorney fees to ensure that if she prevailed on the merits, the award would be reversed. Because we affirm on the merits and because no error was claimed in the award itself, we do not address this issue further.